O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROBIN VITEK, as an individual and on behalf of all others similarly situated,

        Plaintiff,

        vs.

BANK OF AMERICA, N.A. (itself and as successor to BAC HOME LOANS SERVICING, LP), et al.,

        Defendants.

CASE NO. 8:13-cv-816-JLS (ANx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

Before the Court are two motions to dismiss, one filed by Defendants QBE Insurance Corporation, QBE Financial Institution Risk Services, Inc., and Newport Management Corporation ("Insurance Defendants") and one filed by Defendant Bank of America, N.A.  (Ins. Mot., Doc. 41; BoA Mot., Doc. 43.)  Plaintiff Robin Vitek opposed both motions, (Opp'n to Ins., Doc. 50; Opp'n to BoA, Doc. 49), and Defendants replied.  (Ins. Reply, Doc. 52; BoA Reply, Doc. 53.)  Having read the parties' briefing and taken the matter under submission, the Court GRANTS IN PART and DENIES IN PART the Motions.

## I.  BACKGROUND

Plaintiff filed the class action complaint in this matter on May 23, 2013. (Compl., Doc. 1), challenging various aspects of Bank of America's policy requiring borrowers to pay for force-placed hazard insurance on secured properties.  The Complaint asserts four claims:  (1) breach of contract and breach of the implied covenant of good faith and fair dealing; (2) violation of California's Unfair Competition Law; (3) common law restitution / unjust enrichment / disgorgement; and (4) declaratory and injunctive relief.  (*Id.* at 33-42.)  The first and fourth claims are asserted only against Bank of America; the third claim is asserted only against Insurance Defendants.

When ruling on a motion to dismiss, the Court accepts as true the factual allegations in the complaint.  *Hemi Grp., LLC  v. City of New York*, 559 U.S. 1, 5 (2010).  Plaintiff alleges that the Bank of America was party to an agreement with QBE Holdings, a parent of QBE Financial Institutions Risk Services, pursuant to which Bank of America referred borrowers such as Plaintiff exclusively to QBE Insurance for force-placed insurance in exchange for a commission on each insurance policy.  (Compl. ¶ 9, Doc. 1.)

2

On June 5, 2009, Plaintiff entered into a contract with Bank of America to obtain a mortgage loan to purchase a property located at 3105 Rachel Ct. NE, Rio Rancho, New Mexico ("Property").  (Compl. ¶ 32, Ex. 1 ("Agreement").)  The Agreement required Plaintiff, as the borrower, to "keep the improvements now existing or hereafter erected on the Property insured against loss" and mandated that the "insurance shall be maintained in the amounts . . . and for the periods that Lender requires."  (Agreement § 5 ("Insurance Provision").)  The Insurance Provision further provided that, if Plaintiff failed to maintain hazard insurance on the Property, the lender:

> may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.

(Insurance Provision.)

The Agreement also stated that, "if . . . Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is reasonable and appropriate to protect the Lender's interest in the Property . . . ."  (Agreement § 9 ("Limiting Provision").)

In accordance with the Insurance Provision, Plaintiff purchased a homeowner's insurance policy.  (Compl. ¶ 35.)  Plaintiff maintained the policy

3

1  until August 2012, when coverage ceased.  (*Id.* ¶ 36.)  The annual premium for the

2  policy was $549.  (*Id.*)

3       On August 23, 2012, Plaintiff received a notice from Bank of America's

4  Texas office advising him that it would force-place hazard insurance on the

5  Property, backdated to August 9, 2012, if Plaintiff did not provide proof of

6  insurance by October 22, 2012.  (*Id.* ¶ Ex. 13.)  The notice further provided that

7  Plaintiff would be charged for the insurance at an approximate cost of $1,745, that

8  the force-placed insurance would provide less coverage than his previous policy,

9  and that the force-placed insurance may be purchased from a Bank of America

10  affiliate from which Bank of America would receive a commission in connection

11  with obtaining the coverage.  (Lindenbaum Decl., Doc. 43-2, Ex. 1.)[1]

12       On September 23, 2013, Plaintiff was sent a second notice from Bank of

13  America's Texas office advising him of the need to provide proof of coverage by

14  October 23, 2012.  (Compl. ¶ 38, Ex. 14.)

15       On October 26, 2012, Plaintiff received a third notice from Bank of

16  America's Texas office advising him that force-placed insurance had been

17  purchased from QBE Insurance Corporation and placed on the Property,

18  backdated to August 9, 2012.  (*Id.* ¶ 40; Ex. 15.)  The notice further explained that

19  Plaintiff could obtain his own preferred hazard insurance policy and cancel the

20  force-placed insurance for a full refund, and attached a copy of the force-placed

21  insurance policy.  (*Id.* Ex. 15.)  The policy named Bank of America and Plaintiff

22  as the insured, and charged a total premium of $1,745.52.  (*Id.*)

23       On November 16, 2012, Plaintiff obtained private homeowner's insurance

24  coverage with an effective date of November 16, 2012, at a cost of $694.60.  (*Id.*

25

26  _____

27  [1] Plaintiff attached an incomplete copy of the notice, and accordingly the Court takes
judicial notice of the complete version provided by Bank of America.

28

¶ 43.)  Bank of America later credited Plaintiff's escrow account for a portion of the force-placed hazard insurance premium.  (*Id.* ¶ 44.)

## II.    LEGAL STANDARD

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all allegations of material facts that are in the complaint and must construe all inferences in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "However, where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  "A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

In considering the motion, the Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable, and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994),

5

*cert. denied*, 512 U.S. 1219 (1994), *overruled on other grounds in Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

## III.    DISCUSSION

Defendants move to dismiss each of Plaintiff's claims. (Ins. Mem. at 1, Doc. 41-1; BoA Mem. at 1, Doc. 43-1.)  The Court first addresses Defendants' arguments as to the filed rate doctrine, which Defendants argue is a basis to dismiss all of Plaintiff's claims, before addressing the individual claims.

### A.    Filed Rate Doctrine

"The filed rate doctrine[] bars recovery by those who claim injury by virtue of having paid a filed rate." *Gustafson v. BAC Home Loans Servicing*, LP, et al., No. SACV 11-915-JST (ANx), 2012 WL 7051318, at *4 n.2 (C.D. Cal. Dec. 20, 2012) ("*Gustafson II*") (citations and internal quotation marks omitted). Defendants move to dismiss all of Plaintiff's claims based on the filed rate doctrine. (Ins. Mem. at 7-11; BoA Mem. at 22-25.)

This Court has previously declined to dismiss claims where a plaintiff challenged defendants' conduct in force-placing unnecessary, duplicative, or backdated insurance. *See Gustafson II*, 2012 WL 7051318, at *4 n.2; *Gustafson v. BAC Home Loans Servicing LP*, No. SACV 11-915-JST (ANx), 2012 WL 7071488, at *13 (C.D. Cal. Dec. 26, 2012) ("*Gustafson III*").  In *Gustafson*, this Court drew a distinction between a challenge to defendants' conduct and a

1  challenge to the rates themselves.  *See Gustafson II*, 2012 WL 7051318, at *4 n.2;

2  *Gustafson III*, 2012 WL 7071488, at *13.  Other courts have drawn a similar

3  distinction.  *See, e.g.*, *Smith v. SunTrust Mortg. Inc*., No. 13-cv-0739, 2013 WL

4  5305651, at *9 (C.D. Cal. Sept. 16, 2013).  Here, as in *Gustafson*, Plaintiff does

5  not challenge the rates themselves but rather Defendants' conduct in force-placing

6  unnecessary, duplicative and backdated insurance.  (*See, e.g.*, Compl. ¶¶ 89-90.)

7        Defendants argue that the Court should nonetheless apply the filed rate

8  doctrine because in order to calculate damages the Court would necessarily need

9  to determine the difference between a reasonable rate and the amount that Plaintiff

10  was charged.  (Ins. Mem. at 9-10; BoA Mem. at 23-24.)  However, based on the

11  allegations in the Complaint it is not clear that the Court would have to determine

12  a reasonable rate to determine damages.  If the kickbacks and commissions are

13  determined to be unlawful and the amount of those kickbacks and commissions

14  can be readily ascertained, then damages would be awarded based on the amounts

15  of those kickbacks and commissions, which would not require the Court to

16  determine or declare a reasonable rate.  *Cf. Leghorn v. Wells Fargo Bank*, N.A., --

17  - F. Supp. 2d ---, 2013 WL 3064548, at *21 (N.D. Cal. 2013) ("Just because the

18  damages are based on increased costs incurred as a result of the alleged kickback

19  scheme does not transform a challenge to conduct and practices into a challenge to

20  premiums.").

21        Accordingly, the Court declines to dismiss Plaintiff's claims at this stage

22  based on the filed rate doctrine.

23

24     **B.     Breach of Contract Claims**

25        Plaintiff's breach of contract claim contains two separate claims: breach of

26  express contract terms and breach of the implied covenant of good faith and fair

27  dealing.  Plaintiff has adequately pleaded each claim.

28

The Court first addresses Bank of America's argument that the breach of contract claims are "grounded in fraud" and should be dismissed under the heightened pleading standard of Rule 9(b).  (BoA Mem. at 19-20.)  When fraud is not the essential element of a claim, only allegations of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003).  Here, fraud is not an essential element of Plaintiff's breach of contract claims, (Compl. ¶¶ 116, 122), and the Court need not determine whether the allegations as to misrepresentations meet the heightened pleading standard, because the remaining allegations are sufficient to state claims for breach of express contract terms and breach of the implied covenant of good faith and fair dealing, as discussed in the subsections below.

Bank of America argues in a footnote that Plaintiff cannot maintain his claims for breach of contract against Bank of America because Plaintiff breached the Agreement by failing to maintain insurance on the mortgaged properties.  (BoA Mem. at 19 n.11.)  Plaintiff responds that the failure to maintain hazard insurance was not a material breach of the contract.  (Opp'n to BoA at 17.)  Bank of America does not address this argument in its Reply, and at no point does it explain why Plaintiff's claimed breach was material.  Accordingly, the Court will not dismiss Plaintiff's breach of contract claims on this ground.

### 1.     Breach of Express Terms of the Contract

To establish a breach of contract under New Mexico law,[2] Plaintiff must allege "(1) the existence of a valid and binding contract; (2) the plaintiff's

---

[2] The Agreement provides that "it shall be governed by federal law and the law of the jurisdiction in which the Property is located."  (Compl. Ex. 1 § 16.)  Because the

(footnote continued)

8

1  compliance with the contract and his performance of the obligations under it; (3) a

2  general averment of the performance of any condition precedent; and (4) damages

3  suffered as a result of defendant's breach." *McCasland v. Prather*, 92 N.M. 192,

4  585 P.2d 336, 338, 585 P.2d 336 (Ct. App. 1978).

5       Plaintiff alleges that Bank of America breached the express Limiting

6  Provision in the Agreement by, among other things: (i) purchasing insurance in an

7  effort to reap profits from the borrower; and (ii) backdating the force-placed

8  policy to cover periods for which no loss occurred.  (Compl. ¶¶ 57, 116-18; Opp'n

9  to BoA at 15.)

10       This Court has found similar allegations based on identical contract terms

11  sufficient to state a claim for breach of contract under Illinois law, when the

12  alleged breach was based on the Insurance Provision.  *See Gustafson v. BAC*

13  *Home Loans Servicing, LP*, SACV 11-915-JST (ANx), 2012 WL 4761733, at *4

14  (C.D. Cal. Apr. 12, 2012) ("*Gustafson I*").  In this case, Plaintiff alleges a breach

15  based on the Limiting Provision.  (*See* Opp'n to BoA at 15.)

16       The Court finds that the Limiting Provision applies to the Insurance

17  Provision and supports a claim for breach of the express terms of the Agreement.

18  Under the Limiting Provision, "if Borrower fails to perform the covenants and

19  agreements contained in this Security Instrument," "then Lender may do and pay

20  for whatever is reasonable and appropriate to protect the Lender's interest in the

21  Property . . . ."  (Limiting Provision.)  One covenant under the Agreement is that

22  the borrower maintain insurance, and accordingly the actions Bank of America

23  may take to protect its interests in the Property—including obtaining force-placed

24  insurance on the Property—must be "reasonable" and "appropriate."  The

25  Limiting Provision therefore applies to Bank of America's conduct under the

26  _____

27  Property is located in New Mexico, the Court will apply New Mexico law to Plaintiff's
    breach of contract claims.

28

Insurance Provision. *Accord Lauren v. PNC Bank, N.A.*, 13-cv-762, 2013 WL 5565511, at *6 (W.D. Pa. Oct. 8, 2013) (noting that a "majority of other courts to consider the issue" have found that "Sections 5 and 9 of the mortgage may be read consistently and in conjunction with each other").

Bank of America argues that under New Mexico law, "contracting parties are not held to a reasonableness requirement in the exercise of contractually delegated discretion," (BoA Reply at 1), but this argument ignores the Limiting Provision of the contract. While the Limiting Provision afforded the Bank of America discretion to force-place insurance on Plaintiff's Property under the Insurance Provision, it did not necessarily permit Bank of America to do so in the manner alleged by Plaintiff. Nor are the allegations that Bank of America failed to act in a "reasonable" or "appropriate" manner implausible. The Court therefore does not find the other non-binding authority cited by Bank of America persuasive. (*See* BoA Reply at 13.)

Accordingly, Bank of America's Motion is DENIED as to the claim for breach of express terms of the contract.

### 2.      Implied Covenant of Good Faith and Fair Dealing

New Mexico law recognizes that "[w]hether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." *Watson Truck & Supply Co., Inc. v. Males,* 111 N.M. 57, 60, 801 P.2d 639, 642 (1993) (citations omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Id.* at 642 (internal quotation marks omitted). In order to show a breach of the implied covenant of good faith and fair dealing, Plaintiff must allege bad faith or that Defendants wrongfully and intentionally used the contract to the detriment of the other party. *See id.* In general, acting in accordance with

1  an express contractual provision does not amount to bad faith.  *See Cont'l Potash,*

2  *Inc. v. Freeport-McMoran, Inc*., 858 P.2d 66, 115 N.M. 690, 706-07 (1993).

3      Plaintiff alleges that Bank of America exercised its discretion to force-

4  place insurance under the Insurance Provision and Limiting Provision in bad faith

5  and in a manner inconsistent with the parties' reasonable expectations, including

6  by: (1) purchasing insurance from Insurance Defendants, with which it had a

7  prearranged agreement to receive a commission on each policy, instead of pricing

8  insurance on the open market; and (2) backdating the force-placed insurance

9  policy to cover a period of time for which there was no risk of loss.  (Compl.

10  ¶¶ 120-22.)

11      Bank of America argues that under New Mexico law, the implied covenant

12  of good faith and fair dealing cannot "override express provisions addressed by

13  the terms of an integrated, written contract"—here, the Insurance Provision.

14  (BoA Mem at 20; BoA Reply at 13.)  However, Bank of America's argument

15  disregards the Limiting Provision, which applies to the Insurance Provision.  In

16  light of the Limiting Provision, the Court finds that the allegations described

17  above may support a finding of bad faith without overriding the express terms of

18  the Agreement.  Plaintiff has therefore stated a claim for breach of the implied

19  covenant of good faith and fair dealing.  *Cf. Gustafson I*, 2012 WL 4761733, at *4

20  (finding similar allegations sufficient under Illinois law to state a claim for breach

21  of the covenant of good faith and fair dealing).

22      Accordingly, Bank of America's Motion is DENIED as to the claim for

23  breach of the implied covenant of good faith and fair dealing.

24

25      **C.      California Unfair Competition Law ("UCL") Claim**

26      Defendants make several arguments as to why Plaintiff's California UCL

27  claim should be dismissed.  The Court finds that Plaintiff's California UCL claim

28

1 | must be dismissed in light of the choice of law clause in the Agreement, and

2 | therefore does not consider Defendants' other asserted grounds for dismissal.

3 |       "A federal court sitting in diversity must look to the forum state's choice of

4 | law rules to determine the controlling substantive law." *Zinser v. Accufix*

5 | *Research Inst., Inc.,* 253 F.3d 1180, 1187 (9th Cir.2001).  California courts apply

6 | two different analyses for selecting which law should apply in an action.  *Wash.*

7 | *Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 914–15, 103 Cal. Rptr. 2d 320, 15

8 | P.3d 1071 (2001).  Where the parties have entered into a contract that specifies

9 | that another jurisdiction's law will govern their disputes, courts apply the

10 | framework set forth in *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 11 Cal.

11 | Rptr. 2d 330, 834 P.2d 1148 (1992).  Because Plaintiff's Agreement contains a

12 | choice of law provision, the Court uses the analysis set forth in *Nedlloyd* to

13 | determine the controlling substantive law.[3]

14 |       In *Nedlloyd*, the California Supreme Court held that "a valid choice-of-law

15 | clause, which provides that a specified body of law 'governs' the 'agreement'

16 | between the parties, encompasses all causes of action arising from or related to

17 | that agreement, regardless of how they are characterized . . . ."  *Nedlloyd*, 3 Cal.

18 | 4th at 470.  Here, the form contract at issue specifies that it "shall be governed by

19 | Federal law and the law of the jurisdiction in which the [p]roperty is located."

20 | (Agreement § 16.)

21 | _____

22 | [3] "[T]he scope of a choice-of-law clause in a contract is a matter that ordinarily should be

23 | determined under the law designated therein." *Wash. Mut. Bank*, 24 Cal.4th at 916 n.3.
In *Nedlloyd,* however, the court applied California law to determine the scope of a

24 | choice-of-law provision designating Hong Kong law as the governing law because
"neither [party] requested judicial notice of Hong Kong law on the point nor supplied

25 | evidence of the relevant aspects of that law." *Id.*  Here, no party requested judicial notice
nor supplied evidence of New Mexico law on the scope of the choice of law provision.

26 | Thus, the Court will apply California law to determine the scope of the relevant choice-
of-law provisions. *Accord Gustafson v. BAC Home Loans Servicing LP*, --- F.R.D. ---,

27 | 2013 WL 5911252, at *3 n.4 (C.D. Cal. Nov. 4, 2013) ("*Gustafson IV*").

28 |

Plaintiff does not challenge the validity of this clause—indeed, he cites New Mexico law in support of his breach of contract claim—but argues that the claim "does not arise from, nor is it dependent upon, the mortgage contract." (Opp'n to BoA at 11.)  However, the crux of Plaintiff's California UCL claim is that Defendants engaged in unfair business practices when they used their authority under Plaintiff's mortgage contract to force place insurance that included costs and fees unrelated to the provision of insurance.  Plaintiff alleges that "Defendants acted together to exploit BANA's contractual authority to force-place insurance to reap additional and unjustified profits" and argues that the "concerted" conduct of all Defendants in force-placing insurance on the mortgaged property was wrongful under California's UCL.  (*See* Compl. ¶ 7; Opp'n to Ins. 4, 13.)  Plaintiff also states that he "challenges BOA's exploitation of its limited authority under the mortgage to force-place insurance in order to reap financial gain for itself and its force-placed partners to the detriment of borrowers."  (Opp'n to BoA at 4.)  Plaintiff's claim therefore stems from contractual provisions that allow the force-placement of insurance on the Property.  Thus, the Court finds that Plaintiff's California UCL claim falls within the scope of the choice-of-law provision.  *Accord Gustafson IV*, 2013 WL 5911252, at *4.[4]

Once a court determines that a claim falls within the scope of a choice-of-law clause, it must consider whether the clause is enforceable.  *Wash. Mut. Bank*,

_____

[4] Plaintiff argues that the choice of law provision should not apply to its California UCL claim against Insurance Defendants, as they are not parties to the contract.  (Opp'n to Ins. at 12.)  However, the choice of law provision "encompasses *all* causes of action arising from *or related to* that agreement, regardless of how they are characterized," *Nedlloyd*, 3 Cal. 4th at 470 (emphasis added), and Plaintiff is a party to the contract and its claims against Insurance Defendants stem from that agreement for the reasons stated above.  *Accord Gustafson IV*, 2013 WL 5911252, at *4 (finding that similar California UCL claim against both lender and force-placed insurance provider fell within identical choice of law provision).

24 Cal.4th at 916.  In assessing the enforceability of a choice-of-law provision,
California courts follow the approach of section 187(2) of the Restatement
(Second) of Conflict of Laws.  *Id.*  Under that approach, the proponent of the
choice-of-law provision bears the burden of showing that the chosen state "has a
substantial relationship to the parties or their transaction" or that "there is any
other reasonable basis for the parties' choice of law."  *Id.*  If either of these tests is
met, the choice-of-law provision will be enforced "unless the other side can
establish both that the chosen law is contrary to a fundamental policy of California
and that California has a materially greater interest in the determination of the
particular issue."  *Id.*, 24 Cal. 4th at 917.

Here, Defendants have met their burden under section 187.  The chosen
state in the choice-of-law provision bears a substantial relationship to the
contracting parties and to their transaction.  The contracting parties chose the law
of the state in which the Property is located, and none of the parties dispute the
location of the Property.  Because the Property is the subject of the mortgage
contract, the Restatements test is easily met.  *See Gustafson IV*, 2013 WL
5911252, at *4.

Thus, the Court will enforce the choice-of-law provision unless Plaintiff
can show that both (1) "the chosen state's law is contrary to a fundamental policy
of California" *and* (2) "California has a materially greater interest in the
determination of the particular issue."  *Wash. Mut. Bank*, 24 Cal. 4th at 917.  Only
if "there is a fundamental conflict with California law" must the court "then
determine whether California has a 'materially greater interest than the chosen
state in determination of the particular issue . . . .'"  *Id*., 24 Cal. 4th at 916.

Plaintiff has not met his burden of demonstrating that New Mexico's law is
contrary to a fundamental policy of California, and accordingly the Court does not
address whether California has a materially greater interest in the determination of

the issues raised by Plaintiff.  Plaintiff's Oppositions offer no analysis whatsoever of New Mexico law.  Instead, Plaintiff argues that "given the Defendants' overarching involvement with California, . . . California plainly has a fundamental interest at stake"—namely, "the regulation and prevention of unfair and deceptive conduct by businesses operating in and from California."  (Opp'n to BoA at 12.)  However, this argument addresses California's interest, not whether New Mexico law would be contrary to a fundamental policy of California.  *See Wash. Mut*. *Bank*, 24 Cal. 4th at 916.  As Plaintiff does not even suggest that New Mexico law conflicts with California's UCL, Plaintiff has failed to meet his burden.  The Court therefore finds that the choice-of-law provision contained in Plaintiff's Agreement is enforceable and bars Plaintiff's claim under California's UCL.  *Cf. Gustafson IV*, 2013 WL 5911252, at *4.

Accordingly, the Motion is GRANTED as to the California UCL claim. As the Court finds that Plaintiff cannot remedy the defects in its California UCL claim by amending its pleading, the California UCL claim is DISMISSED WITH PREJUDICE.

### D.    Common Law Restitution/Unjust Enrichment/Disgorgement

Insurance Defendants argue that this claim is governed by New Mexico law.  (Ins. Mem. at 23.)  Plaintiff argues that the claim is governed by California law.  (Opp'n to Ins. at 17 n.10.)  However, Insurance Defendants admit that "California and New Mexico law are substantively similar with respect to claims for unjust enrichment" and cite to both California and New Mexico case law. (Ins. Mem. at 23.)  Plaintiff likewise admits there is a "lack of material variance in the laws of California and New Mexico" with respect to unjust enrichment claims. (Opp'n to Ins. at 17.)  The Court finds that the claims should not be dismissed

1    under either California or New Mexico law, and accordingly does not decide at

2    this stage which state's law applies to the claim.

3         Under California law, "[t]here is no cause of action for unjust enrichment.

4    Rather, unjust enrichment is a basis for obtaining restitution based on quasi-

5    contract or imposition of a constructive trust." *McKell v. Wash. Mut., Inc.,* 142

6    Cal.App.4th 1457, 1490, 49 Cal.Rptr.3d 227 (2006).  As Plaintiff has styled this

7    claim as one for "unjust enrichment/restitution/disgorgement," (*see* Compl. at 40),

8    the Court construes Plaintiff's unjust enrichment claim as a claim for restitution.

9    "Under the law of restitution, an individual may be required to make restitution if

10   he is unjustly enriched at the expense of another." *Ghirardo v. Antonioli*, 14

11   Cal.4th 39, 51, 57 Cal.Rptr.2d 687, 924 P.2d 996 (1996).  "A person is enriched if

12   he receives a benefit at another's expense." *Id.*  However, "[e]ven when a person

13   has received a benefit from another, he is required to make restitution only if the

14   circumstances of its receipt or retention are such that, as between the two persons,

15   it is unjust for him to retain it." *Id.* (internal quotation marks and citation

16   omitted).

17        Plaintiff alleges that he does not have a contract with Insurance Defendants

18   as a result of the imposition of force-placed insurance.  (Compl. ¶ 135.)  Plaintiff

19   further alleges that (1) Insurance Defendants received and retained enrichment in

20   the form of insurance premiums for backdated, duplicative and unnecessary force-

21   placed insurance; and (2) it would be unjust for Insurance Defendants to retain

22   those benefits given Defendants' self-dealing conduct.  (*Id*. ¶¶ 136-38.)

23        This Court previously determined that similar allegations were sufficient to

24   state a claim for restitution under California law, relying on another district court

25   decision finding the same. *See Gustafson III* at *12.  The Court finds that the

26   allegations described in this section are sufficient to state a claim under California

27   law for the same reasons.

28

To state a claim for unjust enrichment under New Mexico law, Plaintiff must allege that "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *City of Rio Rancho v. Amrep Southwest Inc*., 150 N.M. 428, 428-29, 260 P.3d 414 (2011).  The Court finds that the same allegations cited above are sufficient to state a claim for unjust enrichment, as Plaintiff alleges that Insurance Defendants knowingly benefitted at Plaintiff's expense by charging and receiving insurance premiums, and that retention of the benefits conferred by those premiums would be unjust.

Accordingly, Insurance Defendants' Motion is DENIED as to Plaintiff's claim for unjust enrichment.

### E.     Declaratory Relief

In a footnote at the end of its brief, Bank of America states that this claim should be dismissed because it relies on Plaintiff's other claims and fails for the same reasons that the other claims fail.  (BoA Mem. at 25 n.20.)  As the Court is not dismissing all of Plaintiff's other claims, the Court will not dismiss this claim.

## IV.   CONCLUSION

For the reasons stated above, Defendants' Motions are GRANTED IN PART and DENIED IN PART.  The Motions are denied to the extent they request dismissal of all claims under the filed rate doctrine.  As to the California UCL claim, the Motions are GRANTED and the claim is DISMISSED WITH PREJUDICE.  The Motions are DENIED with respect to the other claims.

///

///

Any amended pleading addressing must be filed within **21 days** of this Order.

DATED: January 23, 2014

_____

JOSEPHINE L. STATON

JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE